**BETHESDA GENERAL HOSPITAL,**
Respondent,

v.

**The STATE TAX COMMISSION, Appellant.**

No. 50970.

Supreme Court of Missouri,
Division No. 2.

Dec. 13, 1965.

Victor A. Wallace, Barksdale, Abbott & Wallace, St. Louis, for respondent.

Thomas F. McGuire, City Counselor, City of St. Louis, James J. Wilson, Asst. City Counselor, St. Louis, Norman H. Andersen, Atty. Gen., W. Arnold Brannock, State Tax Commission, Jefferson City, for appellant.

George A. Rozier, Forrest P. Carson, Jefferson City, Elliott P. Koenig, Rassieur, Long & Yawitz, St. Louis, for amicus curiae, Hospital Assn. of Metropolitan St. Louis.

PRITCHARD, Commissioner.

■ The issue is whether seven residential properties owned by respondent, Bethesda General Hospital (a charitable corporation), and occupied rent free (at the time of placing thereof on the tax rolls, January 1, 1963) by certain hospital personnel, are subject to state, county and local real estate taxes under Article X, § 6, Const.Mo.1945, V.A.M.S., and § 137.100, RSMo 1959, V.A.M.S. The Constitution and said statute, a revenue law, being for construction, we have appellate jurisdiction. Art. V, § 3, Const.Mo.1945, V.A.M.S.; St. Louis Gospel Center v. Prose, Mo., 280 S.W.2d 827, 828 [1].

There are eight properties owned by respondent. Six are located on Rutger Street in St. Louis, Missouri, at the following street addresses: 3633, 3635, 3657, 3665, 3677 and 3681. These six properties were used and occupied as of January 1, 1963, respectively, by the following personnel of respondent: Supervisor of maintenance, salary $400 per month, his wife and two children in the two-story residence; assistant supervisor of maintenance and his family, salary $300 per month, in the two-story residence; assistant supervisor of maintenance and his family, salary $300 per month, in the one-story residence; chief laboratory technician (salary $425 per month) and a registered nurse (who was on leave from the hospital); house physician and family, salary $1,000 per month, in the four-room residence; and house physician and family, salary $1,000 per month, in the four-room residence. A seventh property is located at 3652 Hickory Street, approximately one block north from respondent's hospital, and was occupied by a house physician and family, salary $1,000 per month, and later in 1963 was occupied by a maintenance man and his family. The eighth single-family property, located at 3647 Rutger Street, was not occupied on January 1, 1963, but was being renovated and its tax-exempt status is not now in issue. In April or May, 1963, it was occupied by one of respondent's assistant supervisors of maintenance and his family, whose salary is $300 per month.

Respondent rented the subject properties to and including the month of December, 1962, for about $50 per month. No rentals were charged occupants after January 1, 1963. The reasonable monthly rental of the properties was between $50 and $70 per month, not including utilities.

After appeals to it, the State Tax Commission of Missouri ruled that none of the properties was exempt from taxation. Upon further appeal, the trial court reversed the ruling of the State Tax Commission, and held that the use of all of the residential properties, except that located at 3647 Rutger Street (it being unoccupied on January 1, 1963), was sufficiently connected with the accomplishment of respondent's charitable purpose so as to be exempt from such taxation.

Heat, light, water, a telephone extension and general maintenance were furnished by respondent to each resident. All of the occupants are full-time employees of respondent, and are on call 24 hours per day. All are essential to the operation of the

hospital, and would be housed in the hospital building itself (which is located across Rutger Street from those residences located thereon) if there were physically room in that building for them. The residences are not used for any hospital function such as for the care or treatment of patients, or medical, surgical, dental functions. There are around 400 employees of respondent. There is no question, and it is not otherwise contended, that respondent's hospital purpose is charitable, and that it operates not for profit. Its pro forma decree of incorporation so states. It is a member of the United Fund; it does a tremendous amount of charity work for patients who cannot pay for care and treatment; and it has continually experienced a net loss in operating income by reason of its charitable work even after application of endowment income.

In its Point I, appellant contends that the trial court erred in finding as a matter of law that respondent's properties were actually and regularly used exclusively for purposes purely charitable within the meaning of said § 137.100(5) and Art. X, § 6, Const.Mo.1945, because the subject real properties were used regularly and exclusively for residential purposes only.

Said Art. X, § 6, Const.Mo.1945, provides in part that "all property, real and personal, not held for private or corporate profit and used exclusively for religious worship, for schools and colleges, for purposes purely charitable, * * * may be exempted from taxation by general law. * * *." Implementing this constitutional provision is said § 137.100(5), which provides as exempt from taxation for state, county or local purposes: "(5) All property, real and personal actually and regularly used excusively for religious worship, for schools and colleges, or for purposes purely charitable and not held for private or corporate profit, except that the exemption herein granted does not include real property not actually used or occupied for the purpose of the organization but held or used as investment even though the income or rentals received therefrom is used wholly for religious, educational or charitable purposes. As amended Laws 1959, H.B. No. 108, § 1."

The issue here is concerned with the words of the Constitution and statute, supra, that real property shall be exempt from taxation where it is not held for private or corporate profit, and the same is *used exclusively* for purposes purely charitable. The rules applicable to cases such as this are that exemption statutes are strictly but reasonably (so as not to curtail the intended scope of the exemption) construed; that the charitable use exemption depends upon the use made of the property and not solely upon the stated purposes of an organization; that each tax exemption case is "peculiarly one which must be decided upon its own facts"; that taxation is the rule; exemption is the exception; and that claims for exemption are not favored in the law. Midwest Bible and Missionary Institute v. Sestric, 364 Mo. 167, 260 S.W.2d 25. In the case of Bader Realty & Investment Co. v. St. Louis Housing Authority, 358 Mo. 747, 217 S.W.2d 489, 492 [2], the court said, "The courts formerly held a somewhat limited view and rather narrowly interpreted the words 'charity' and 'charitable purposes'. But the present day concept of 'purposes purely charitable' is broader than mere relief of the destitute or the giving of alms. As now viewed it comprehends activities not self-supporting 'which are intended to improve the physical, mental and moral condition of the recipients and make it less likely that they will become burdens on society and more likely that they will become useful citizens.'" In the Bader case it was held that property owned by the St. Louis Housing Authority, upon which after slum clearance low rent housing was erected, was tax exempt, it being a charitable purpose.

Other authority states that the reason for state tax exemption provisions is that they are given in return for the performance of functions which benefit the

public; 84 C.J.S. Taxation § 281, p. 533; that the exemption in favor of the charitable institutions is based upon the ground that a benefit is conferred upon the public by them, with consequent relief, to some extent, of the burden imposed upon the state to care for and advance the interests of its citizens. 34 A.L.R. 635. See also 51 Am.Jur. Taxation § 600, p. 583.

Aside, however, from the basic rules of construction and reasons for tax exemptions of charitable organizations, we have the narrow question of whether the use by personnel of respondent exclusively as family residences (and not directly for any hospital function as the facts show) destroys any exemption from taxation. The case of State ex rel. Spillers v. Johnston, 214 Mo. 656, 113 S.W. 1083, 21 L.R.A.,N.S., 171), had in it the sole question of whether a use of part of a building by the proprietor, with no other avocation, of Kemper Military School at Boonville, Missouri, as a family residence rendered it taxable. It was there contended, as here, that such use destroyed the exclusive character of the school's educational exemption under the statute. The court denied the contention and said, loc. cit. 113 S.W. 1085: "The phrase 'exclusively used' has reference to the primary and inherent use as over against a mere secondary and incidental use. (Citing case) If the incidental use (in this instance residing in the building) does not interrupt the exclusive occupation of the building for school purposes, but dovetails into or rounds out those purposes, then there could fairly be said to be left an exclusive use in the school on which the law lays hold."

We have found no case in this state precisely on the point of tax exemption of an owner charitable corporation providing separate but nearby residential facilities (used *only* as residences) for its essential employees. There are, however, cases from other jurisdictions which are of aid and which hold that such exemption exists. In point is respondent's cited case of Cedars of Lebanon Hospital v. Los Angeles County, 35 Cal.2d 729, 221 P.2d 31, 15 A.L.R.2d

1045. There, a question presented was whether the use of property by plaintiff hospitals for a nurses' training school and to provide housing for hospital interns, resident doctors, student nurses, and certain other alleged essential employees required to be readily available in their effective operation constituted a use exclusively for hospital purposes and so brought the property within the scope of the welfare tax exemption (Cal.Rev. & Tax.Code, § 214). The court held that these enumerated uses came within the exemption, and with respect to use of the property to provide housing facilities for interns, resident doctors, superintendents, and other members of the hospital staff, had this to say, loc. cit. 221 P.2d 38 [12]: "[T]hat the administration of the affairs of the institution requires that certain personnel and employees be located on or near its grounds to the end that its operation may be efficiently conducted and supervised, and that emergency cases may be effectively handled as they arise. Since it is commonly expected by the public that admittance to a hospital may be had at any hour of the day or night, such twenty-four hour service necessarily involves the presence at all times of adequate help and trained personnel. * * * As the welfare exemption law has been heretofore discussed 'property used exclusively for * * * hospital * * * purposes' would comprehend not only the buildings and grounds actually used for housing the patients in their treatment and care, but also such adjacent or nearby buildings used for housing such persons as may be essential for the efficient operation of the hospital." In the case of St. Luke's Hospital v. Boyland, 12 N.Y.2d 135, 237 N.Y.S.2d 308, 312, 187 N.E.2d 769, 772 [5], it was held, and cases were cited so holding, that "The test of any tax exemption is whether apartments in them (the subject apartment houses) occupied by hospital personnel and their immediate families are devoted to a use which 'is reasonably incident' to the major purpose of the hospital. (Citing cases) We think it is clear that they were. In Matter

of De Mott v. Notey, 3 N.Y.2d 116, 164 N.Y.S.2d 398, 143 N.E.2d 804, use of dwellings by hospital personnel, in a case, like this, of a unified facility, was held to be accessory to use for a hospital." (Parenthetical statement added.) See also Township of Princeton, County of Mercer v. Tenacre Foundation, 69 N.J.Super. 559, 174 A.2d 601, where a residence provided the director of a sanatorium and nursing home for the care and treatment of the sick was held tax exempt as reasonably necessary for the efficient functioning of the institution, and was considered "actually and exclusively" used in the work of the Foundation within the meaning of the statute; State v. Fairview Hospital Association, 262 Minn. 184, 114 N.W.2d 568; Annotations, 34 A.L.R. 674; 108 A.L.R. 295; 15 A.L.R.2d 1064.

Appellant's cited cases are distinguishable. St. Louis Gospel Center v. Prose, Mo., 280 S.W.2d 827, disallowed tax exemption because a tenant, not a member of plaintiff church and not connected with its center, paid rent for rooms and interrupted the exclusive use of the property for religious, charitable and educational purposes. State ex rel. Spillers v. Johnston, supra, allowed the exemption, and except for general rules stated, is not helpful to appellant. Evangelical Lutheran Synod, etc. v. Hoehn, 355 Mo. 257, 196 S.W.2d 134, involved the tax exemption (disallowed) of a competitive commercial printing and publishing house business conducted on the premises. Y.M. C.A., etc. v. Sestric, 362 Mo. 551, 242 S.W. 2d 497, 506, allowed the tax exemption for premises upon which dormitories, meals service, barber and laundry service, sale of incidental, etc., for the purpose of providing charity (without profit) of a practical sort, for the welfare of young men and boys, because "the provision and maintenance thereof dovetails into and rounds out the charitable purposes of plaintiff." In People ex rel. Kelly v. Avery Coonley School, 12 Ill. 2d 113, 145 N.E.2d 80, a tax exemption was disallowed upon the ground that the buildings were occupied by a headmistress and by

unmarried teachers for residential use which was *primary*. In Gifford Memorial Hospital v. Town of Randolph et al., 119 Vt. 66, 118 A.2d 480, occupancy by physicians for their public offices was held to be a primary use of the building, and the same was but an incidental benefit to the hospital, hence the exemption was disallowed. In Doctors Hospital v. Board of Tax Appeals, 173 Ohio St. 283, 181 N.E.2d 702, residence quarters for interns furnished by a charitable hospital were held not tax exempt because the benefit to the public of having an intern-resident program was too remote, as was held, to remove from the tax lists the facilities used by those participating in the program. In the Doctors case the court distinguished Aultman Hospital Ass'n v. Evatt, Tax Com'r, 140 Ohio St. 114, 42 N.E. 2d 646, which exempted from taxation the quarters provided for (necessary) student nurses by a hospital which operated a school of nursing.

■ In the case at bar the evidence is undisputed that the doctors, the nurse, and the maintenance personnel who occupied the seven residential properties were on call 24 hours a day. They were *key* personnel, *necessary* to the efficient operation of the hospital, for the continuance of which it was likewise necessary that they be located near (across the street and within a block) its grounds. The "exclusive use" of the property was and is reasonably connected to respondent's charitable purpose of operating the hospital. We rule that the use by these employees of the properties as residences provided them by respondent is not the dominant purpose, but is merely incidental to respondent's said main charitable purpose.

■ Appellant's second point is that the trial court, in reversing the State Tax Commission, erred because it improperly and unlawfully substituted its discretion for that of the State Tax Commission, the decision of which being supported by competent and substantial evidence upon the whole record. The contention is without merit. The facts are conceded here—i. e., that respondent is

a charitable corporation, and the residential uses to which the subject property is being put by respondent for its essential employees. There was thus no question of weighing the evidence, and hence no place for discretion to be exercised by the State Tax Commission. Upon these undisputed facts the question is one of law—Were the properties of respondent exempt from taxation? The trial court ruled correctly, as we have held, and within the provisions of Civil Rule 100.07(c), V.A.M.R. Point II is overruled.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.